## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION

**ASHLEY MOODY and AUTUMN TERRELL,**
**on behalf of themselves and on behalf of**
**all others similarly situated,**

      **Plaintiffs,**

**v.**                            **Case No. : 16-60364-WPD**

**ASCENDA USA INC. d/b/a 24-7 INTOUCH,**
**and VERIFIED CREDENTIALS, INC.,**

      **Defendants.**
_____/

## FIRST AMENDED COMPLAINT CLASS ACTION COMPLAINT
## AND DEMAND FOR JURY TRIAL

Plaintiffs, ASHLEY MOODY and AUTUMN TERRELL, file this First Amended Complaint against ASCENDA USA INC. d/b/a 24-7 INTOUCH ("Defendant Ascenda"), and VERIFIED CREDENTIALS, INC. ("Defendant Verified") (collectively "Defendants") under the Fair Credit Reporting Act of 1970, as amended ("FCRA"), 15 U.S.C. § 1681 et seq.

## PRELIMINARY STATEMENT

1. Defendants are repeat joint FCRA violators. Basically, Defendants' FCRA violations resulted in Plaintiff Ashley Moody being falsely labeled a convicted thief and drug user when, in fact, she was not. Worse still, this is the second time Defendants have been sued -- jointly -- for nearly identical violations of the FCRA, making their FCRA violations alleged herein particularly egregious and willful. A copy of the first lawsuit filed against Defendants for nearly identical FCRA violations, filed in September of 2015 in the Middle District of Florida, is attached as Exhibit A in a case styled *Darrell Bryan Jones v. Ascenda USA, Inc., d/b/a Intouch, and Verified Credentials, Inc.,* M.D. Fla. Case No.: 8:15-cv-02268-VMC-AEP).

2.      Defendants' FCRA violations have caused Plaintiff Ashley Moody real damages, including both monetary damages (lost pay).  Furthermore, both Plaintiffs and the Putative Class Members are also entitled to recover from Defendants statutory damages.

3.      Defendant Ascenda operates customer service call centers across the continental U.S., including locations in Florida.

4.      Defendant Verified Credentials operates a national database of public records and related employment histories as a nationwide consumer reporting agency ("CRA"), and prepares and furnishes consumer reports for employment and other purposes.

5.      Defendant Ascenda routinely obtains and uses information in consumer reports to conduct background checks on prospective and existing employees, and frequently relies on such information, in whole or in part, as a basis for adverse employment action, such as termination, reduction of hours, change in position, failure to hire, and failure to promote.

6.      Defendant Verified Credentials provided these consumer reports to prospective and existing employers of Plaintiffs and members of the Putative Classes. Many of these employers, like Defendant Ascenda, refused to hire or discharged Plaintiffs and other individuals based in whole or in part on the contents of the consumer reports.

7.      While the use of consumer report information for employment purposes is not per se unlawful, it is subject to strict disclosure and authorization requirements under the FCRA.

8.      Defendants willfully violated these requirements in multiple ways, thereby systematically violating Plaintiffs' rights and the rights of other putative Class members.

9.      Based on the foregoing violations, Plaintiffs asserts FCRA claims against Defendants on behalf of themselves and four separate putative Classes.

10.     In Counts One and Two, Plaintiffs assert a pair of FCRA claims under 15 U.S.C.

§§ 1681b(b)(2)(A)(i)-(ii) on behalf of a "Background Check Class," consisting of:

> All Ascenda USA's employees and job applicants in the United States who were the subject of a consumer report that was procured by Ascenda USA within five years of the filing of this complaint through the date of final judgment in this action as required by the FCRA.

11.     In Count Three, Plaintiff Ashley Moody asserts an FCRA claim under 15 U.S.C.

§ 1681k on behalf of an "1681k Notice Class" consisting of:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States) (a) who were the subject of a Verified Credentials consumer report issued within the five years preceding the filing of the Complaint and furnished to a third party, (b) that was furnished for an employment purpose, (c) that contained at least one public record of a criminal conviction or arrest, civil lien, bankruptcy or civil judgment, and (d) to whom Verified Credentials did not place in the United States mail postage pre-paid, on the day it furnished the report, a written notice that it was furnishing the subject report and containing the name of the person that was to receive the report.

12.     In Count Four, Plaintiff Ashley Moods asserts an FCRA class claims

under 15 U.S.C. § 1681b(b)(3) on behalf of a "Pre-Adverse Class" consisting of:

> All Defendant Ascenda employees and job applicants in the United States against whom adverse employment action was taken, based, in whole or in part, on information contained in a consumer report obtained within five years of the filing of this complaint through the date of final judgment in this action, who were not provided the proper pre-adverse notice as required by the FCRA.

13.     In Count Five, Plaintiff Ashley Moody asserts an FCRA class claims

under 15 U.S.C. § 1681i on behalf of a "Reinvestigation Class" consisting of:

> All natural persons residing in the United States who within the 2 years prior to the filing of this complaint were required by Defendant Verified to complete to provide additional documentation proving their identity before Defendant Verified would and did commence a reinvestigation.

14.     On behalf of themselves and the Putative Classes, Plaintiffs seek statutory

damages, costs and attorneys' fees, equitable relief, and other appropriate relief under the FCRA.

## THE PARTIES

15.     Individual and representative Plaintiffs ASHLEY MOODY and AUTUMN TERRELL live in Pinellas County, Florida.  Plaintiffs are former employees of Defendant Ascenda, and are members of each of the Putative Classes defined below.

16.     Defendant Ascenda maintains headquarters in Colorado. Defendant Ascenda operates customer service call centers across the country and employs thousands people.

17.     Defendant Verified Credentials maintains headquarters in Minnesota and sells its products and services throughout the United States, including Broward County, Florida.

## JURISDICTION AND VENUE

18.     This The Court has federal question jurisdiction under the FCRA, 15 U.S.C. § 1681p, and 28 U.S.C. § 1331, and venue is proper because Defendants regularly sell products and services in this District.

## ALLEGATIONS REGARDING DEFENDANTS' BUSINESS PRACTICES

19.     Defendant Ascenda conducts background checks on the majority of its job applicants as part of a standard screening process.  In addition, Defendant Ascenda also conducts background checks on existing employees from time to time during the course of their employment.

20.     Defendant Ascenda does not perform these background checks in-house. Rather, Defendant Ascenda relies on outside consumer reporting firms to obtain this information and send the resulting reports back to Defendant Ascenda.

21.     Defendant Verified Credentials furnished consumer reports concerning Plaintiffs and other individuals to Ascenda USA.

22.     Defendant Verified Credentials is a "consumer reporting agency" within the

4

meaning of the FCRA, 15 U.S.C. § 1681a(f).

23.     Defendant Verified Credentials maintains consumer files containing public record information, including, but not limited to, the criminal history of individuals.

24.     Defendant Verified Credentials sells such consumer files to potential employers wishing to investigate the background and criminal history of job applicants or current employees. These consumer reports are sold to businesses across the United States by Verified Credentials.

25.     These reports constitute "consumer reports" within the meaning of the FCRA.

26.     At all times relevant hereto, Defendant Ascenda was a "user" of those consumer reports, as governed by the FCRA.

27.     Defendant Ascenda procured consumer report information on Plaintiffs in violation of the FCRA.

28.     Under the FCRA, it is unlawful to procure a consumer report or cause a consumer report to be procured for employment purposes, unless:

> (i)     a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, *in a document that consists solely of the disclosure* that a consumer report may be obtained for employment purposes; and
>
> (ii)    the consumer has authorized the procurement of the consumer report in writing (which authorization may be made on the document referred to in clause (i)).

15 U.S.C. §§ 1681b(b)(2)(A)(i)-(ii) (emphasis added).

29.     Defendant Ascenda failed to satisfy these disclosure and authorization requirements.

30.     Defendant Ascenda does not have a stand-alone FCRA disclosure or authorization form.

31.     This practice violates the plain language of the FCRA, and flies in the face of unambiguous case law and regulatory guidance from the FTC. *See E.E.O.C. v. Video Only, Inc.*, No. 06-1362, 2008 WL 2433841, at *11 (D. Or., June 11, 2008) ("I grant summary judgment of liability that Video Only violated . . . 15 § 1681b(b)(2)(A)(I). This section provides that at any time before the report is procured, a disclosure is made in a document that consists solely of the disclosure that a consumer report may be obtained for employment purposes. Video Only disclosed this possibility as part of its job application, which is not a document consisting solely of the disclosure.")

32.     Defendant Ascenda willfully disregarded this case law and regulatory guidance, and willfully violated 15 U.S.C. §§ 1681b(b)(2)(A) by procuring consumer report information on employees without complying with the disclosure and authorization requirements of the FCRA.

33.     Defendant Verified Credentials provided consumer report information on Plaintiffs to Ascenda USA in violation of the FCRA.

34.     Under the FCRA, when a consumer reporting agency prepares a consumer report on an individual for employment purposes, and compiles and reports items of information about this individual that are matters of public record and are likely to have an adverse effect on the individual's ability to obtain or maintain employment, the consumer reporting agency must, at the time that the public record information is furnished to the person using the report, notify the individual that it is reporting public record information about the individual, and also disclose the name and address of the person requesting the response to the individual. See 15 U.S.C. § 1681k(1).

35.     The FCRA further provides that a consumer reporting agency also has an alternative duty to "maintain strict procedures designed to insure that whenever public

information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported, it is complete and up to date." 15 U.S.C. § 1681k(2).

36.     Despite the clear and unambiguous FCRA requirements, Defendant Verified Credentials willfully violated 15 U.S.C. § 1681k by failing to provide Plaintiffs with contemporaneous notice when it furnished consumer reports to Ascenda USA, and failing to insure that the public record information that it provided on Plaintiffs was complete and up to date.

**<u>ALLEGATIONS SPECIFIC TO PLAINTIFFS</u>**

37.     Plaintiff Ashley Moody was originally hired on or about September 22, 2014 to work for Defendant Ascenda at a call center in Florida.

38.     At the time she was hired she executed Defendant Ascenda's "Disclosure and Authority to Release Information" document, attached as Composite Exhibit B to this Amended Complaint.

39.     In violation of the FCRA's strict stand-alone disclosure mandates, Composite Exhibit B contains a waiver of liability purporting to, on one hand, disclose to Plaintiffs what their rights are under the FCRA while, on the other hand, requiring Plaintiffs to release those same rights.   Both Plaintiffs received and executed the same non-compliant waiver.

40.     Importantly, Plaintiff Ashley Moody has no criminal history and no criminal convictions.

41.     Defendant Ascenda routinely hires people, like Plaintiff Ashley Moody, shortly before the Holiday season to handle the holiday rush of calls for its customers at its call centers. Then, after the Holiday rush is over and Defendant Ascenda no longer needs the same number of employees, it fires people because they are no longer needed.   One of the methods Defendant

7

Ascenda utilizes to fire people is to go back through old hires and abruptly conduct background checks in the hope it will find something to justify a termination.

42.    Defendant Ascenda abruptly decided, after employing Plaintiff Ashley Moody for several months without incident, that it wanted to do a background check on her.

43.    In late December of 2014 or early January of 2015, following the Holiday rush, Defendant Ascenda obtained a consumer report on Plaintiff Ashley Moody from Defendant Verified Credentials.

44.    Defendant Verified Credentials did not notify Plaintiff Ashley Moody that it had provided her employer with a consumer report about her, despite the fact that it contained adverse information on her.

45.    Defendant Verified furnished a consumer report for employment purposes compiled from public records containing adverse information to Defendant Ascenda.    More specifically, the original consumer report compiled by Defendant Verified Credentials regarding Plaintiff Ashley Moody contained false and adverse information that was *both* incomplete and not up to date, stating that she had been convicted of petit theft and drug possession when, in fact, Plaintiff has no criminal convictions whatsoever.  The convictions listed on Plaintiff Ashley Moody's original consumer report belonged to someone else.    It also attributed to Plaintiff Ashley Moody a different last name, a different birth date, and an address in Georgia (a state to which she has no connection).

46.    As a result of the incomplete and out-of-date information contained in the consumer report, Defendant Ascenda suspended Plaintiff Ashley Moody from work without pay. This adverse employment action caused Plaintiff hundreds of dollars in lost pay which she never recovered.

47.     Defendant Verified failed to maintain strict procedures designed to ensure that the consumer reports it provided on Plaintiff Ashley Moody and putative class members were complete and up to date, much less truthful or accurate, as evidenced by the fact that it continues to submit to employers consumer reports obtaining convictions that do not belong to the consumer/applicants whom the reports are supposed to contain information about.   Put simply, information cannot be considered "complete" or "up to date" under the FCRA so as to say that "someone named Ashley Moody has a conviction record, but whether this is the Ashley Moody you are inquiring about, I do not know." Yet, that is precisely what Defendant did as to Plaintiff Ashley Moody and putative class members.

48.     Defendant Verified's incomplete information and not-up-to date consumer reports fail to make the necessary linkage to each respective consumer.  Defendant Verified consumer reports are incomplete and not up to date because the results it obtains and provides as consumer reports include conviction records that belong to any number of individuals having the same first and last names and/or date of birth as the specific consumer as to whom the search is really directed.  Defendant Verified only purchases parts and/or portions of information (because it is cheaper to do so) relating to convictions, rather than all information on the consumer, making the reports both incomplete and out of date.

49.     Defendant Verified fails to conduct any kind of manual review of the public record data information that it reports in order to satisfy § 1681k(a)(2), instead relying upon incomplete and out of date automated information culled from public databases.   Had it done such a manual review prior to issuing Plaintiff Ashley Moody's original consumer report, she would not have been suspended from her job right after Christmas was over.

50.     Worse still, Defendant Verified had at its disposal the means to determine that

these convictions did not belong to Plaintiff Ashley Moody.  This evidenced by the fact and that Defendant Verified was able make such a determination within approximately one week of Plaintiff Ashley Moody disputing the original consumer report.

51.     Defendant Verified only investigates the accuracy or completeness of court records when a consumer initiates an inquiry.  Defendant Verified disseminates only the portions of criminal records that the public entities from whom it purchases its data from chooses to provide in bulk.  Thus, Defendant Verified failed to compile or report "complete" items of information on Plaintiff and the putative class as required by the FCRA.

52.     On multiple occasions Defendant Verified provided reports, including Plaintiff's consumer report and the consumer report from the *Darrell Bryan Jones v. Ascenda USA, Inc., d/b/a Intouch, and Verified Credentials, Inc.,* M.D. Fla. Case No.: 8:15-cv-02268-VMC-AEP) (filed on September 29, 2015 and attached as Exhibit A), that inaccurately and erroneously list criminal convictions that simply do not belong in the reports issued.

53.     It was not until ***after*** Plaintiff Ashley Moody was suspended from work without pay by Defendant Ascenda that she given a copy of her consumer report.  Only then did she learn of the convictions wrongfully attributed to her.  On or about January 6, 2015 Plaintiff contacted Defendant Verified and attempted to begin the dispute process.  However, before Defendant Verified would initiate the dispute, it required Plaintiff to submit to it Government-issued identification.  Plaintiff complied and submitted her Military I.D. card.

54.     Less than a week later, Defendant Verified issued to Defendant Ascenda a second consumer report, this time containing no convictions attributed to Plaintiff Ashley Moody.

55.     Defendant Ascenda then allowed Plaintiff Ashley Moody to return to work, but refused to pay Plaintiff for the days of work she out on suspension.  Once Plaintiff returned to

work, Defendant Ascenda made Plaintiff's work life unbearable.  Soon thereafter, she quit in mid-to-late January of 2015.

56.     On or around June 2014, Defendant Ascenda procured a consumer report on Plaintiff Autumn Terrell for hiring purposes.   Like the non-compliant FCRA disclosure Defendant provided to Plaintiff Ashley Moody, Plaintiff Autumn Terrell also received an illegal FCRA disclosure form containing a waiver of liability.  *See* Composite Exhibit B.

57.     Defendant Ascenda violated 15 U.S.C. § 1681b(b)(2)(A)(i) by procuring consumer reports on Plaintiffs and other putative Class members for employment purposes, without first making proper disclosures in the format required by the statute. Under this subsection of the FCRA, Defendant Ascenda is required to disclose to its employees – ***in a document that consists solely of the disclosure*** – that it may obtain a consumer report on them for employment purposes, prior to obtaining a copy of their consumer report. Id. Defendant Ascenda willfully violated this requirement by failing to provide Plaintiff  and the putative Class with a copy of a document consisting solely of the disclosure that Defendant Ascenda may obtain a consumer report on Plaintiff and the putative class for employment purposes, prior to obtaining a copy of their consumer reports.   This practice violates longstanding regulatory guidance from the FTC.

58.     Also in violation of 15 U.S.C. §§ 1681b(b)(2)(A)(ii), Defendant Ascenda unlawfully inserted liability release provisions into forms purporting to grant Defendant Ascenda authority to obtain and use consumer report information for employment purposes. The FCRA forbids this practice, since it mandates that all forms granting the authority to access and use consumer report information for employment purposes be "stand-alone forms" that do not include any additional agreements. Defendant Ascenda's decision to include a liability release

11

provision in its authorization forms is contrary to both the plain language of the FCRA and to unambiguous regulatory guidance provided by the FTC.

59.     Specifically, Defendant Ascenda's Background Check Disclosure form, attached as Composite Exhibit B, demonstrates Defendant Ascenda's intent to conduct a background check while simultaneously purporting to release Defendant Ascenda from any liability in relation to the background check in the event that any information obtained proves erroneous. The release reads as follows: "I further understand and waive my right to privacy in this investigation and release and hold harmless Ascenda USA inc. dba 24-7 Intouch and its agent Verified Credentials, Inc., from any liability."

60.     The inclusion of this release provision in Defendant Ascenda's disclosure and release form violates the FCRA. Since 1998, the FTC has specifically warned that "inclusion of such a waiver [of liability] in a disclosure form will violate Section (b)(2)(A) of the FCRA, which requires that a disclosure consist 'solely' of the disclosure that a consumer report may be obtained for employment purposes."

61.     Defendant Ascenda willfully disregarded this regulatory guidance and willfully violated 15 U.S.C. § 1681b(b)(2)(A) by procuring consumer report information on employees without complying with the disclosure and authorization requirements of the FCRA.

62.     The FCRA also requires employers to provide notice at three different periods: (1) before an employer requests and/or procures a consumer report, it must provide notice to the employee in a "stand-alone" document, and must also receive written authorization from the employee (referred to as "Disclosure and Authorization"); (2) once an employer obtains a consumer report on an employee and before an employer can take adverse action against this same employee, it must first provide the employee with a copy of the report, and provide the

employee with a description of the employee's rights under the FCRA (referred to as "Pre-Adverse Action Notice"); and (3) once an employer takes adverse action, it must notify the employee that (i) it is taking adverse action based on the information contained in the employee's consumer report, (ii) it is providing the employee with the name, address, and telephone number of the consumer reporting agency that furnished the consumer report, (iii) it is providing the employee with a statement that the consumer reporting agency did not make the decision to take the adverse action and is unable to provide the consumer with specific reasons as to why the adverse action was taken, (iv) it is providing the employee with notice of the employer's rights as a consumer to obtain…a free copy of the consumer report on the consumer from the consumer reporting agency…[within] the 60–day period," and (v) it is providing the employee with "notice of the consumer's right to dispute…with a consumer reporting agency the accuracy or completeness of any information in a consumer repot furnished by the agency [(referred to as "Post-Adverse Action Notice")]." See 15 U.S.C. §§ 1681b and 1681m.

63.     Defendant Ascenda failed to satisfy the requirements of the Disclosure and Authorization when it procured Plaintiffs' consumer reports.

64.     Defendant Verified Credentials violated 15 U.S.C. § 1681k by failing to notify Plaintiff Ashley Moody and other putative Class members contemporaneously that public record information about them was being furnished to Defendant Ascenda. Defendant Verified Credentials further violated 15 U.S.C. § 1681k by failing to maintain strict procedures to ensure that the public record information contained in Plaintiff Ashley Moody's and other putative Class members' consumer reports was both complete and up to date.

65.     Specifically, Defendant Verified Credentials furnished Defendant Ascenda with consumer reports containing inaccurate and adverse information about employees or applicants

for employment, demonstrating Defendant Verified Credentials' failure to ensure the accuracy of these reports.

66.    In doing so, Defendant Verified Credentials failed to satisfy the requirements of the FCRA.

## RULE 23 REQUIREMENTS

67.    <u>Numerosity</u>:    The members of the Putative Classes are so numerous that joinder of all Class members is impracticable. Defendant Ascenda regularly obtains and uses information in consumer reports furnished by Defendant Verified Credentials to conduct background checks on prospective employees and existing employees, and frequently relies on such information, in whole or in part, as a basis for taking adverse employment action. Plaintiff is informed and believes that during the relevant time period, thousands of Defendant Ascenda's employees and prospective employees satisfy the definition of the Putative Classes.

68.    <u>Typicality</u>:    Plaintiffs' claims are typical of those of the members of the Putative Classes. Defendant Ascenda typically uses consumer reports to conduct background checks on employees and prospective employees.   Defendant Ascenda typically uses the services of Defendant Verified Credentials to furnish these reports. The FCRA violations suffered by Plaintiffs are typical of those suffered by other Putative Class members, and Defendants treated Plaintiffs consistent with other Putative Class members in accordance with their standard policies and practices.

69.    <u>Adequacy</u>:    Plaintiffs will fairly and adequately protect the interests of the Putative Classes, and has retained counsel experienced in complex class action litigation.

70.    <u>Commonality</u>: Common questions of law and fact exist as to all members of the Putative Classes, and predominate over any questions solely affecting individual members of

the Putative Classes. These common questions include, but are not limited to:

     a.   Whether Defendant Ascenda uses consumer report information to conduct background checks on employees and prospective employees;

     b.   Whether Defendants' background check practices and/or procedures comply with the FCRA;

     c.   Whether Defendant Ascenda violated the FCRA by procuring consumer report information without making proper disclosures in the format required by the statute;

     d.   Whether Defendant Ascenda violated the FCRA by procuring consumer report information based on invalid authorizations;

     e.   Whether Defendant Verified Credentials violated the FCRA by providing consumer reports to Ascenda USA without providing Plaintiff Ashley Moody and other members of the Consumer Reporting Class with contemporaneous notice or insuring that the public record information provided to Ascenda USA was complete and up to date;

     f.   Whether Defendants' violations of the FCRA were willful;

     g.   The proper measure of statutory damages; and

     h.   The proper form of injunctive and declaratory relief.

71.    This case is maintainable as a class action because prosecution of actions by or against individual members of the Putative Classes would result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for Defendants. Further, adjudication of each individual Class member's claim as separate action would potentially be dispositive of the interest of other individuals not a party to such action, thereby impeding their ability to protect their interests.

72.    This case is also maintainable as a class action because Defendants have acted or refused to act on grounds that apply generally to the Putative Classes, so that final injunctive relief or corresponding declaratory relief is appropriate with respect to the Classes as a whole.

73.     Class certification is also appropriate under because questions of law and fact common to the Putative Classes predominate over any questions affecting only individual members of the Putative Classes, and also because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendants' conduct, which is described in this Complaint, stems from common and uniform policies and practices, resulting in common violations of the FCRA. Members of the Putative Classes do not have an interest in pursuing separate actions against Defendants, as the amount of each Class member's individual claim for damages is small in comparison to the expense and burden of individual prosecution. Class certification will also obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendants' practices. Moreover, management of this action as a class action will not present any foreseeable difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Putative Class members' claims in a single action, brought in a single forum.

74.     Plaintiffs intend to send notice to all members of the Putative Classes to the extent required by the Federal Rules of Civil Procedure. The names and addresses of the Putative Class members are readily available from Defendants' records.

**FIRST CLASS CLAIM FOR RELIEF**
**Both Plaintiffs as to Defendant Ascenda Only**
**Violation of FCRA 15 U.S.C. § 1681b(b)(2)(A)(i)**

75.     Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

76.     In violation of the FCRA, the background check that Defendant Ascenda required the Background Check Class to complete as a condition of their employment with

16

Defendant Ascenda does not satisfy the disclosure requirements of 15 U.S.C. § 1681b(b)(2)(A)(i), because Defendant Ascenda failed to provide a stand-alone document pertaining to how the consumer report information would be obtained and utilized.

77.     Defendant Ascenda violated the FCRA by procuring consumer reports on Plaintiffs and other Background Check Class members without first making proper disclosures in the format required by 15 U.S.C. § 1681b(b)(2)(A)(i).  Namely, these disclosures had to be made: (1) before Defendant Ascenda actually procured consumer reports, and (2) in a stand-alone document, clearly informing Plaintiff and other Background Check Class members that Defendant Ascenda might procure a consumer report on each of them for purposes of employment.

78.     The foregoing violations were willful.  At the time Defendant Ascenda violated 15 U.S.C. § 1681b(b)(2)(A)(i) Defendant knew it was required to provide a stand-alone form (separate from the employment application) prior to obtaining and then utilizing a consumer report on Plaintiffs and the Putative Class.  Plaintiffs' disclosures containing the illegal liability waiver were executed on September 22, 2014 (Ashley Moody) and April 8, 2015 (Autumn Terrell).  A plethora of authority, including both case law and FTC opinions, existed at the time of Defendant's violations on this very issue that held waivers cannot be included in the FCRA forms at issue.  *Avila v. NOW Health Group, Inc*., No. 14-C-1551, 2014 WL 3537825, at *2 (N.D. Ill. July 17, 2014); *Singleton v. Domino's Pizza, LLC*, No. 2012 WL 245965, at *7-9 (D. Md. Jan. 25, 2012); *Reardon v. Closetmaid Corp*., No. 2:08-cv-1730, 2013 WL 6231606, at *10-11 (W.D.Pa. Dec. 2, 2013); *EEOC v. Video Only, Inc*., No. 06-1362-KI, 2008 WL 2433841, at *11 (D. Or. June 11, 2008); FTC Staff Opinion Letter to H. Roman Leathers (Sept. 9, 1988).[1]

79.     Moreover, Defendant Ascenda was also sued in September of 2015 in the *Darrell*

---

[1] *Available at* http://www.ftc.gov/policy/advisory-opinions/advisory-opinion-leathers-09-09-98.

*Bryan Jones v. Ascenda USA, Inc., d/b/a Intouch, and Verified Credentials, Inc.,* M.D. Fla. Case No.: 8:15-cv-02268-VMC-AEP) matter.  That case, which is nearly identical to this case, was filed as another FCRA class action.  Thus, Defendant Ascenda has dealt with FCRA compliance litigation before and, thus, knew what its obligations are.

80.     Defendant's willful conduct is also reflected by, among other things, the following facts:

    a.  Due to Defendant Ascenda's placement of a release of liability within the FCRA disclosure in its job application, Defendant knew of its potential FCRA liability (which is precisely why it tried to avoid it);

    b.  Defendant is a large corporation with access to legal advice through its own general counsel's office and outside employment counsel, and there is no contemporaneous evidence that it determined that its conduct was lawful;

    c.  Defendant knew or had reason to know that its conduct was inconsistent with published FTC guidance interpreting the FCRA and the plain language of the statute; and

    d.  Defendant voluntarily ran a risk of violating the law substantially greater  than the risk associated with a reading that was merely careless.

81.     Plaintiffs and the Background Check Class are entitled to statutory damages of not less than one hundred Dollars ($100) and not more than one thousand Dollars ($1,000) for each and every one of these violations under 15 U.S.C. § 1681n(a)(1)(A), in addition to punitive damages under 15 U.S.C. § 1681n(a)(2).

82.     Plaintiffs and the Background Check Class are further entitled to recover their costs and attorneys' fees, in accordance with 15 U.S.C. § 1681n(a)(3).

### SECOND CLASS CLAIM FOR RELIEF
**Both Plaintiffs as to Defendant Ascenda Only**
**Violation of FCRA 15 U.S.C. § 1681b(b)(2)(A)(ii)**

83.     Plaintiffs allege and incorporate by reference the allegations in the preceding

paragraphs.

84.     Defendant Ascenda violated the FCRA by procuring consumer reports relating to Plaintiffs and other Background Check Class members without proper authorization. See 15 U.S.C. § 1681b(b)(2)(A)(ii).

85.     The foregoing violations were willful.  At the time Defendant Ascenda violated 15 U.S.C. § 1681b(b)(2)(A)(ii).  Defendant knew that in order for it to have authorization to obtain consumer reports on Plaintiffs and the Putative Class Members it was required provide a stand-alone form (separate from the employment application) prior to obtaining and then utilizing a consumer report on Plaintiffs and the Putative Class.  Plaintiffs' disclosures containing the illegal liability waiver were executed on September 22, 2014 (Ashley Moody) and April 8, 2015 (Autumn Terrell).  A plethora of authority, including both case law and FTC opinions, existed at the time of Defendant's violations on this very issue that held waivers cannot be included in the FCRA forms at issue.  *Avila v. NOW Health Group, Inc*., No. 14-C-1551, 2014 WL 3537825, at *2 (N.D. Ill. July 17, 2014); *Singleton v. Domino's Pizza, LLC*, No. 2012 WL 245965, at *7-9 (D. Md. Jan. 25, 2012); *Reardon v. Closetmaid Corp*., No. 2:08-cv-1730, 2013 WL 6231606, at *10-11 (W.D.Pa. Dec. 2, 2013); *EEOC v. Video Only, Inc*., No. 06-1362-KI, 2008 WL 2433841, at *11 (D. Or. June 11, 2008); FTC Staff Opinion Letter to H. Roman Leathers (Sept. 9, 1988).[2]

86.     Moreover, Defendant Ascenda was also sued in September of 2015 in the *Darrell Bryan Jones v. Ascenda USA, Inc., d/b/a Intouch, and Verified Credentials, Inc.,* M.D. Fla. Case No.: 8:15-cv-02268-VMC-AEP) matter.  That case, which is nearly identical to this case, was filed as another FCRA class action.  Thus, Defendant Ascenda has dealt with FCRA compliance litigation before and, thus, knew what its obligations are.

---

[2] *Available at* http://www.ftc.gov/policy/advisory-opinions/advisory-opinion-leathers-09-09-98.

87.     Defendant's willful conduct is also reflected by, among other things, the following facts:

      a.  Due to Defendant Ascenda's placement of a release of liability within the FCRA disclosure in its job application, Defendant knew of its potential FCRA liability (which is precisely why it tried to avoid it);

      b.  Defendant is a large corporation with access to legal advice through its own general counsel's office and outside employment counsel, and there is no contemporaneous evidence that it determined that its conduct was lawful;

      c.  Defendant knew or had reason to know that its conduct was inconsistent with published FTC guidance interpreting the FCRA and the plain language of the statute; and

      d.  Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

88.     Plaintiffs and the Background Check Class are entitled to statutory damages of not less than one hundred Dollars ($100) and not more than one thousand Dollars ($1,000) for each and every one of these violations under 15 U.S.C. § 1681n(a)(1)(A), in addition to punitive damages under 15 U.S.C. § 1681n(a)(2).

89.     Plaintiffs and the Background Check Class are further entitled to recover their costs and attorneys' fees, in accordance with 15 U.S.C. § 1681n(a)(3).

**THIRD CLASS CLAIM FOR RELIEF**
**By Plaintiff Ashley Moody as to Defendant Verified Credentials Only**
**Violation of FCRA 15 U.S.C. § 1681k**

90.     Plaintiff Ashley Moody alleges and incorporates by reference the allegations in the preceding paragraphs.

91.     Defendant Verified Credentials violated 15 U.S.C. § 1681k(1) by knowingly failing to notify Plaintiff Ashley Moody and other members of the Class contemporaneously that consumer reports about them were being furnished to Defendant Ascenda.

20

92.     Defendant Verified Credentials also violated 15 U.S.C. § 1681k(2) by failing to maintain strict procedures to ensure that the public record information contained in Plaintiff Ashley Moody's and other Class members' consumer reports was both complete and up to date.

93.     The foregoing violations were willful.  Defendant Verified Credentials acted in deliberate or reckless disregard of its obligations and the rights of Plaintiffs and other Consumer Reporting Class members under 15 U.S.C. § 1681k.  Defendant Verified Credentials knew or should have known of its legal obligations under the FCRA. These obligations are well established in both the plain language of the FCRA and in case law. Defendant Verified Credentials obtained, or had available to it, substantial written materials informing it of its duties under the FCRA. Any reasonable consumer reporting agency would know of, or could easily discover, the FCRA's mandates.

94.     According to its website, Defendant Verified serves as a CRA to Fortune 500 companies and has been in business since 1984.  It has done in excess of over 15 million background checks and, thus, should know what is required of it by the FCRA.

95.     Notably, Defendant Verified obtained Ashley Moody's original consumer report on or about January 6, 2015.   A plethora of authority, including case law, existed at the time on 15 U.S.C. § 1681k that Defendant had access to, or at least should have known about.  *See, e.g*., *Dalton v. Capital Assoc, Indus., Inc*., 257 F.3d 409, 417 (4th Cir. 2001); *Smith v. HireRight Solutions, Inc*., 711 F. Supp. 2d 426, 438 (E.D. Pa. 2010); *Farmer v. Phillips Agency, Inc*., 285 F.R.D. 688, 695 (N.D. Ga. 2012); *Moore v. First Advantage Enter. Screening Corp*., No. 4:12 - CV-00792, 2013 U.S. Dist. LEXIS 54907, 2013 WL 1662959, at *5-6 (N.D. Ohio Apr. 17, 2013).

96.     Plaintiff Ashley Moody and the 1681k Notice Class are entitled to statutory damages of not less than one hundred Dollars ($100) and not more than one thousand Dollars

($1,000) for each and every one of these violations under 15 U.S.C. § 1681n(a)(1)(A), in addition to punitive damages under 15 U.S.C. § 1681n(a)(2).

97.     Plaintiff Ashley Moody and the 1681k Notice Class are further entitled to recover their costs and attorneys' fees, in accordance with 15 U.S.C. § 1681n(a)(3).

**FOURTH CLASS CLAIM FOR RELIEF**
**By Plaintiff Ashley Moody as to Defendant Ascenda Only**
**Violation of FCRA 15 U.S.C. § 1681b(b)(3)(A)**

98.     Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

99.     Defendant used a "consumer report," as defined by the FCRA, to take adverse employment action against Plaintiff and other members of the Adverse Action Class.

100.     Defendant violated the FCRA by failing to provide Plaintiff and other Adverse Action Class members with a copy of the consumer report that may have been used to take adverse employment action against them. *See* 15 U.S.C. § 1681b(b)(3)(A).

101.     The foregoing violations were willful. At the time Defendant Ascenda violated 15 U.S.C. § 1681b(b)(3) Defendant knew that before taking adverse employment action against Plaintiff Ashley Moody and other putative class members based on consumer report information it was required to first provide a copy of the pertinent consumer report and a reasonable opportunity to respond to the information in the report. Specifically, Plaintiff Ashley Moody's original report was obtained on or about January 6, 2015. Besides the plain language of the FCRA itself on pre-adverse notice requirements, at that time a plethora of authority existed at the time that Defendant either knew about or should have known about. *See e.g.*, *Kelchner v. Sycamore Manor Health Ctr.*, 305 F. Supp. 2d 429, 436 (M.D. Pa. 2004) *aff'd*, 135 F. App'x 499 (3d Cir. 2005); *Singleton v. Domino's Pizza, LLC*, No. 2012 WL 245965 (D. Md. Jan. 25, 2012);

22

*Reardon v. Closetmaid Corp.*, No. 2:08-cv-1730, 2013 WL 6231606 (W.D.Pa. Dec. 2, 2013).

102.     Moreover, Defendant Ascenda was also sued in September of 2015 in the *Darrell Bryan Jones v. Ascenda USA, Inc., d/b/a Intouch, and Verified Credentials, Inc.,* M.D. Fla. Case No.: 8:15-cv-02268-VMC-AEP) matter.  That case, which is nearly identical to this case, was filed as another FCRA class action.  Thus, Defendant Ascenda has dealt with FCRA compliance litigation before and, thus, knew what its obligations are.

103.     Defendant's willful conduct is also reflected by, among other things, the following facts:

      a.  Defendant is a large corporation with access to legal advice through its own general counsel's office and outside employment counsel, and there is no contemporaneous evidence that it determined that its conduct was lawful;

      b.  Defendant voluntarily ran a risk of violating the law substantially greater  than the risk associated with a reading that was merely careless.

104.     Alternatively, and at a minimum, Defendant's actions were negligent.

105.     Plaintiff Ashley Moody and the Background Check Class are entitled to statutory damages of not less than one hundred Dollars ($100) and not more than one thousand Dollars ($1,000) for each and every one of these violations under 15 U.S.C. § 1681n(a)(1)(A), in addition to punitive damages under 15 U.S.C. § 1681n(a)(2).

106.     Plaintiff Ashley Moody is individually entitled to her actual back pay damages.

107.     Plaintiffs and the Background Check Class are further entitled to recover their costs and attorneys' fees, in accordance with 15 U.S.C. § 1681n(a)(3).

## FIFTH CLASS CLAIM FOR RELIEF
### By Plaintiff Ashley Moody as to Defendant Verified Only
### Violation of FCRA 15 U.S.C. § 1681i

108.    Plaintiff Ashley Moody incorporates by reference those paragraphs set out above as though fully set forth herein.

109.    Defendant Verified's failure to conduct, after adequate notice of disputed information from Plaintiff and members of the Reinvestigation Class, a reinvestigation without the consumer first providing Defendant Verified with some written form of identification violates 15 U.S.C. § 1681i(a).

110.    The conduct, action, and inaction of Defendant Verified were willful, rendering it liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

111.    The conduct, action, and inaction of LexisNexis were willful, rendering it liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

112.    Plaintiff and other members of the putative class are entitled to recover costs and attorney's fees as well as appropriate equitable relief from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and the Putative Classes, pray for relief as follows:

A.    Determining that this action may proceed as a class action;

B.    Designating Plaintiffs as class representatives and designating Plaintiffs' counsel as counsel for the Putative Classes;

C.    Issuing proper notice to the Putative Classes at Defendants' expense;

D.      Declaring that Defendants committed multiple, separate violations of the FCRA;

E.      Declaring that Defendants acted willfully in deliberate or reckless disregard of Plaintiff's rights and its obligations under the FCRA;

F.      Awarding statutory damages as provided by the FCRA, including punitive damages;

G.      Awarding actual damages to individual Plaintiff Ashley Moody;

H.      Awarding reasonable attorneys' fees and costs as provided by the FCRA; and

I.      Granting other and further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiffs and the Putative Class demand a trial by jury.

DATED this 8th day of April, 2016.

Respectfully submitted,

*/s/Brandon J. Hill*

**LUIS A. CABASSA**
Florida Bar Number: 0053643
Direct No.: 813-379-2565
**BRANDON J. HILL**
Florida Bar Number: 37061
Direct No.: 813-337-7992
**WENZEL FENTON CABASSA, P.A.**
1110 North Florida Avenue, Suite 300
Tampa, FL 33602
Main No.: 813-224-0431
Facsimile: 813-229-8712
Email: lcabassa@wfclaw.com
Email: bhill@wfclaw.com
Email: jriley@wfclaw.com
Email: mkimbrough@wfclaw.com
**Attorneys for Plaintiff**

25

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 8th day of April, 2016 I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of this filing to:

Brian M. Ercole
Morgan, Lewis & Bockius LLP
5300 Southeast Financial Center
200 South Biscayne Blvd.
Miami, FL 33131
Counsel for Defendant Ascenda USA Inc.

Alex S. Drummond
SEYFARTH SHAW LLP
1075 Peachtree Street, N.E., Suite 2500
Atlanta, GA 30309
Counsel for Defendant Verified Credentials, Inc.

*/s/Brandon J. Hill*_____
**BRANDON J. HILL**